Good morning. We have four appeals that are scheduled for oral argument this morning. The first is James Stimpson v. the Warden. Ann Myles-Golson is here for the appellant. Stimpson, Dylan Maldon, is here for the Warden. And Ms. Golson, Ms. Myles-Golson, you may begin your argument. Good morning, Your Honors, and may it please the Court. My client has produced two sworn affidavits showing that the only witness connecting him to a crime lied. That evidence was never presented at trial, and if it had been, any reasonable juror would have voted to acquit. The sole issue on appeal is whether Mr. Stimpson has presented sufficient evidence of actual innocence to open the gateway to the district court to consider the merits of his time-barred constitutional claims. Well, that Schlupp-McGuicken standard set forth by the Supreme Court to give the petitioner an opportunity to excuse the procedural bar is a pretty heavy and strict standard. It's a heavy standard to meet. And so the evidence that he's relying upon in this case, the district court didn't find it sufficient because it's just mere impeachment evidence. What do you have to say about that? Your Honor, two answers. First, that we would disagree that this is mere impeachment evidence. In House v. Bell, the only case in which the Supreme Court held that a petitioner actually satisfied the Schlupp standard, the court emphasized two factors. First, that the evidence undermined the state's theory of the case, and second, that it pointed to a potential different suspect who could have committed the crime, and that's exactly what the evidence does here. Mr. Stimpson's evidence of actual evidence does not just undermine the state's theory of the case, but it suggests that an alternative suspect, this drug dealer who Chandler admitted to having hired him, both to Bone and Cash, but to witnesses who testified at trial. Who's the Mexican drug dealer? We don't even have a name, do we? We don't even know who it is, according to these affidavits. We do not have a name, but it is consistent throughout the transcript and in these affidavits that Chandler admitted both before trial and after trial that he was actually hired by this Mexican drug dealer, and it is clear from the record that he was involved with Hispanic drug dealers, and that is what led to his drug trafficking charge. What do you have to say about the fact that these two affidavits by Bone and Cash, they were never tested, they weren't subject to cross-examination. How do we know the veracity of the information contained in those affidavits? Your Honor, both Bone and Cash were subject to cross-examination at the Rule 32 evidentiary hearing, and the state was able to test their statements in the affidavits, and defense counsel was able to bring out more information during that evidentiary hearing. I believe that transcript is especially relevant here to show not only did Chandler lie post-trial, but the reason for those lies, which Bone and Cash both consistently emphasized, were due to Chandler's fear over the man who actually hired him to commit this crime. When you look at the evidence at trial, according to the standard, you've got to show that no reasonable jury, given this evidence, would find Stimson guilty of participating in this crime beyond a reasonable doubt. You still have Chandler's testimony, and you still have Stimson's own testimony, and you still have testimony that Stimson said he was going to whack somebody. Your Honor, while Graves' statement is still in the record of Stimson saying that he knew someone who needed to be whacked, that alone is not sufficient to convict him of this charge, and in light of the evidence of actual innocence, Danny Chandler's testimony is wholly discredited, and key elements of the state's theory of the crime have been specifically undermined by both the medical records and the ballistics evidence. The reason that these affidavits are sufficient to pass the first step of the Schlupp standard are because they are new, reliable, and point to actual innocence. So you mentioned the medical records, or the medical report, and the ballistics report. What's your, just give us your best argument that we can consider those as new evidence. Your Honor, those are new evidence because they were never presented to the jury, and when considered in light of the fact that Mr. Stimson's petition is based on an ineffective assistance of counsel claim, focused on the failure of counsel to present this very evidence to the jury, that evidence must be new for purposes of the Schlupp standard. I believe the Third Circuit explained this most clearly in the Reeves case when it posited a hypothetical. If the state, for example, has surveillance footage showing that someone other than the defendant committed the crime, and doesn't produce that in discovery, then that footage would be new evidence for purposes of opening up the gateway to a procedurally defaulted Brady claim. But if that evidence was presented to trial counsel, trial counsel was constitutionally defective and did not present it to the jury, that evidence under the state standard would not be new for purposes of opening the gateway to a defaulted ineffective assistance of counsel claim. The entire purpose, according to McQuiggan v. Perkins, of the fundamental miscarriage of justice exception is to ensure that federal constitutional errors do not result in the imprisonment of innocent persons. And it would be to carve out an exception within that fundamental miscarriage of justice exception for ineffective assistance of trial counsel claims to apply the state standard when that claim is premised upon the failure to present the very actual evidence issue, actual evidence, actual innocence evidence used to open up the gateway. So you're saying, I mean, the Third Circuit has sort of, I think, more of the most sophisticated view of this, which is that you have to look at the underlying claim. Yes, Your Honor. With respect to the medical report, you're not really relying on the medical report itself, though. You're relying on sort of a hearsay statement within the medical report. I guess that seems, well, in these actual innocence cases, sort of the strongest case for actual innocence is some kind of scientific evidence or something like that. I mean, we've got here a hearsay statement within a medical report. We've got sort of an amended ballistics report, and we've got these two affidavits. Even if we were to consider everything, I mean, I think this is what Judge Wilson's questions go to. It seems like considering everything, you know, this might help the defendant in the case, but it doesn't seem like it proves his innocence of the crime. I mean, what do you say about that? Your Honor, I think that House v. Bell is especially instructive here. In that case, the Supreme Court emphasized that it was not a case of complete exoneration, and it is not Petitioner's stance that this is a case of complete exoneration, but the actual innocence evidence considered holistically both undermines key elements of the State's theory of the case and points to an alternative suspect. When you think about factual innocence, Your Honor, as you stated, you typically think of exonerating scientific evidence or evidence that points to someone else committing the crime. Here, the State tried a purely circumstantial case and weighed against that purely circumstantial evidence. Well, I mean, it wasn't circumstantial because you had the trigger man say that he was hired by Stimson, right? Yes, Your Honor. Chandler did testify that he was hired by Stimson, but that testimony is directly conflicted by his later statements to Bohn and Cash. Yes, so it's not – I mean, that's the thing. It really – the case turns on the credibility of the person who testified. Yes, Your Honor. And I guess – let me ask you this. I mean, has there been – do you have any case where impeachment evidence was sufficient to go through this gateway? Your Honor, in House v. Bell, the affidavits that were considered went to the credibility of witnesses who had testified at trial. And in that case, the Supreme Court quoted Schlupp v. Dalo, which discussed the fact that a district court will have to make credibility determinations when applying the Schlupp standard because certain actual innocence evidence will necessarily go to the credibility of witnesses who testified at trial. This case is a perfect example of why impeachment evidence is sufficient to open the gateway, especially in a solicitation charge. In a solicitation to commit murder or crime, the key evidence is going to be the testimony of the person who is solicited to prove that that agreement or that solicitation occurred. Impeachment evidence would necessarily be the most relevant evidence to prove actual innocence because there would be no forensic evidence. Because, I mean, I think – and I mean, in House was a case about DNA evidence. I mean, you know, you could attack this conviction if you, for example, had an alibi that wasn't found right or something like that. I mean, here there's evidence that suggests – like you say, there's evidence that suggests that this guy was lying when he was on the stand. But it seems like – I mean, I guess here's the problem I have with your position. It seems like you can always find, 20 years after the fact, some additional reason to impeach somebody. And when there's so many criminal cases that turn on the testimony of a key witness, I mean, aren't you – wouldn't we – if we said this went through the gateway, wouldn't we basically say there is no statute of limitations anymore? No, Your Honor. And the reason is because this evidence does not just impeach Chandler's testimony but points to an alternative suspect. And those affidavits are substantiated by the ballistics evidence and trial testimony. In House v. Bell, the Supreme Court stated that the reliability of even inherently suspect affidavits can be bolstered for purposes of an actual innocence gateway claim. There's independent support for the statements in those affidavits elsewhere in the record. Is the alternative suspect the unnamed drug dealer? Yes, Your Honor. And I wondered, like Judge Wilson, why would the unnamed drug dealer want to kill Loretta? Nobody seemed to articulate that. Did I miss that? No, Your Honor. There was a potential motive presented at trial that concerned her work and potentially taking away that man's children. But that was more of a motive than – That drug dealer? The drug dealer, yes, Your Honor. But that was more of a motive than was presented for Mr. Stimpson's involvement here. The only suggested motive for Mr. Stimpson's involvement was his friendship with Ms. Gilbert's husband, which was presented purely through testimony of the victim herself. Well, there was an undoubted longstanding friendship between the two. Your Honor, Mr. Stimpson testified that they did not have a close relationship. It was only – I didn't say a close relationship. I said longstanding. They've known each other forever. Yes, Your Honor. Okay, because I couldn't figure out why the drug dealer was trying to kill Loretta as opposed to – Yes, Your Honor. – anybody else. It just didn't make any sense to me. The testimony was that her job led to her potentially sounding the alarm on potentially a child abuse situation or something that would have resulted in that man's children being taken away. That was discussed extensively. It was all highly speculative. It was highly speculative, yes, Your Honor. But, again, that was more of a motive than was provided for Mr. Stimpson. There was no exchange of money here. There was no suggestion that he had any ill will towards Ms. Gilbert or even really knew her. And the only testimony that linked him to Ms. Gilbert was the victim's testimony that if these medical records had come in, would have been impeached because she said on the stand that she never stated that her husband was the shooter. But, in reality, on page two of those EMS records, there's a recorded statement from the crime scene where she stated that her husband was the shooter. The only reason I bring it up because you say, well, this is more than impeachment. It's evidence of an alternative suspect. But that doesn't seem to be very weighty here because we don't even know the name of the alternative suspect, much less any reason why they want Loretta killed. Your Honor, I see that time has expired. May I briefly respond to that last point? This alternative suspect is more reliable here simply because he's consistently referred to, even if unnamed, is described through three witnesses' testimony at trial and through both affidavits produced with statements made by Chandler after close of trial. Thank you. Before you conclude, what do you have to say about availability? Because the circuits appear to be split on how we factor in whether or not this evidence was available to trial counsel at the time of trial. Yes, Your Honor. There is no unavailability requirement within the Schlupp standard. It's never been supported by the Supreme Court. The Supreme Court in Schlupp and House refers to this evidence as newly presented evidence, not newly discovered or newly available evidence. And it would make no sense, as the Third Circuit noted in Reeves, when the underlying constitutional claim is ineffective assistance of counsel for failure to present this testimony. Thank you. Thank you. Mr. Mauldin. Thank you. May it please the Court. For Stimson Prevail here, he has to show that light of new evidence, not a single reasonable juror would have voted to convict him. But his so-called new evidence is not new, not preserved, or is, in fact, not evidence of innocence but helps the state. But even assuming all of his evidence is new and that it is preserved, he still cannot make the extremely demanding showing required by Schlupp. Well, she cites some cases that says the new evidence doesn't have to be a complete exoneration, does it? Sure, it doesn't have to be a complete exoneration. But I've heard references to House v. Bell several times, and I think House is actually really helpful for us. So if you look at what happened in House, there was strong evidence undermining the state's primary argument and also credible evidence pointing to a specific named suspect. And in that case, the Court contrasted the evidence pointing to a different suspect with evidence like we have here where it points to a suspect who can no longer be held accountable when the evidence comes in the form of an affidavit years after the crime. And in that case, the Supreme Court noted that such evidence has been described as not uncommon and unfortunate. And then in the same paragraph, House v. Bell goes on to say that there was no apparent motive to lie for the witnesses who produced those affidavits because it wasn't like the folks were friends of the suspect or fellow inmates. But here we have both. Both Cash and Bone were incarcerated with Stimson when he was in jail. He had known both of them his entire life, and they were repeat felons. And they repeated this same theory about the unnamed drug dealers being responsible for the crime that three witnesses testified about at trial. So the problem with this theory was not that it wasn't adequately presented. It was just that it really made no sense. And, you know, as the Court was getting at when my friend of the other friend was arguing. Yeah, both of those affidavits say Chandler lied. And so my impression is this case rests and falls on Chandler's testimony. Yes. Right? So if there's a reasonable, I mean, doubt about whether Chandler lied on the witness stand. I mean, this case is all about Chandler's credibility. And so it's mere impeachment testimony, but it's impeaching Chandler. Yes, but the question is could a reasonable juror be unmoved by this new impeachment testimony? Yeah, could the lawyer have created a reasonable doubt in the mind of the jury after impeaching Mr. Chandler on the witness stand? Yes. And, you know, we have pretty good evidence of how it would work out if Mr. Chandler were heavily impeached on the stand. And that was the trial of Mr. Simpson. He was impeached over and over again. And the main theory of the defense was that Chandler was just throwing all the blame on Simpson to get a deal. And in Calderon v. Thompson, the Supreme Court explained that when you have a case of new innocence, the witness is heavily impeached. Yeah, he's on the witness stand. You've got Mr. Bone says you lied to him. And Mr. Cash says you lied to him. Why should the jury believe Mr. Chandler's testimony? Well, so the jury already believes Mr. Chandler's testimony after hearing three witnesses tell basically the same story. And, again, this— They didn't hear anything about Bone or Cash. Right. They did not hear anything about Bone or Cash, you know, career criminals who Simpson was incarcerated with after jail and filed affidavits that look remarkably like the trial testimony. Right. The Mexican stuff came up at trial, right? I mean, that was there. There was somebody that said a very similar thing. Yes, yes. There were really three witnesses. There was, you know, Tom Simpson himself when he testified, his cousin Mike Simpson, and then Eric Carroll. And, you know, the idea was, you know, as my friend on the other side said, that Ms. Gilbert was, you know, going to take away this drug dealer's kids. And, you know, so this guy wanted to go, you know, kill her so that she would take the kids away. But there was testimony from Mrs. Gilbert that, you know, she didn't work at DHR. She worked at the Department of Public Health. She had nothing to do whatsoever with taking kids away at her job, that she didn't know why anyone of Mexican descent would have any problems with her. There was just no plausible motive. One weird thing about this case is that I don't think the evidence of actual innocence is very strong at all. But at the same time, the guilt case against Simpson doesn't seem to be very strong at all. I mean, there's really no motive for him to have done this. I mean, it's all very strange. What do you say about that? Do we have to weigh the evidence of actual innocence kind of in light of the State's case against the defendant? Well, I'm not sure there's no motive. I mean, Simpson was, I believe, in his own words, he said he was good friends with Mr. Gilbert. But, I mean, you know, good friends with someone doesn't mean that you go and spend, you know, $15,000 to hire someone to kill that person's wife. I mean, that's, you know, I mean, goodness. Well, I don't really think that was the State's theory of the case, respectfully. It was that Simpson was just a middleman. And there was extensive testimony. Was the husband ever tested? I mean, was the husband ever prosecuted? So I do not believe he was ever convicted. He was investigated for years. But, you know, I do think that there was motive and it would have been money for his friend who had motive to kill his wife. And if you just think about just how coincidental this whole case would have been, you know, for Simpson to be innocent, it would have to be that Danny Chandler, you know, decided to murder someone or tried to murder someone he did not know whatsoever at all. Well, not innocent. Guilt beyond a reasonable doubt. That would be the standard, right? Well, yes. But, I mean, here, could any reasonable juror believe that? Well, it's that a reasonable juror would have to believe actual innocence, right? That's the standard is that the evidence of the new evidence has to establish that no reasonable juror could convict. Yes. Right? Exactly. And if you look at what happened at trial, there was testimony from Todd Graves that Simpson, you know, had offered to pay him money to murder somebody. You know, at trial, he later came back and said, oh, that was, you know, just one big joke. And he added some extra details that weren't in Todd Graves' original statement to the police. But the fact that Simpson was offering people money to murder someone, that the wife of one of his friends, that someone tried to murder her, that apparently Danny Chandler tried to murder this woman with no apparent motive. He didn't know her at all. There's no evidence that he had any connection to this woman whatsoever. A reasonable juror could say, you know, yeah, that seems too coincidental to be the case. It sounds like you're saying impeachment evidence can never be enough to excuse the procedural bar. No, I don't think so. It's just not impeachment evidence that is cumulative of that which was presented at trial, that is presented by fellow inmates who have motive to lie and who have quite questionable credibility and who point to unnamed suspects. Impeachment evidence like that, I don't think is enough. Well, let me ask you this. Has any court ever held that impeachment evidence is enough? I have not seen a court hold that just pure impeachment evidence. Yeah, I mean, I think, I mean, just to sort of take the flip side of Judge Wilson's question. I mean, why isn't, why isn't the right rule that impeachment evidence can never be enough? Well, I mean, I guess you could imagine a case with incredibly strong impeachment evidence. Maybe it could, maybe it couldn't. I mean, that's just not really the case here. What if the case rises and falls on the testimony of one witness and it's that witness's evidence that they're seeking to impeach? Well, maybe it could, but I think House v. Bell was incredibly instructive on this point. Again, there was strong forensic testimony undermining the state's strongest evidence. The Supreme Court said, look, we don't even know if this is enough. Maybe it wouldn't be. Then there was also very strong evidence pointing to a different suspect. And then there was also some impeachment evidence. That is the type of incredibly strong showing that it takes to pass Congress's, the clear statute of limitations that Congress enacted in that book. Could you just address the issue about what constitutes new evidence? So the petitioner argued that we should follow the Third Circuit and use this test where we ask whether new evidence, whether evidence is new in light of the constitutional claim that's being raised. You argue in your brief that new evidence means basically not available to anyone at the time of trial. Why should we do that instead? Yes. So I think it's helpful to remember that McQuiggan exception is an equitable exception to clear statutory text. This has a one year time limit for habeas petitions. And the equitable exception, it considers interests like finality, comedy, and also the state's preservation of evidence. Similar matters as that and the drain on the court's resources. And so what would happen if you started letting habeas petitioners raise evidence they had at trial, is you would invite many more claims to be filed and much more litigation after the statute of limitations is run. It would be a drain on the court system. It would take longer for victims in the state to receive finality. I mean, just look at this case, five years on the statute of limitations. Yeah, but I mean, the Supreme Court created it. So McQuiggan is, for our position, McQuiggan is sort of, it's a foregone conclusion. We have to apply it. Why would we adopt a definition of new that said we don't care, you know, we're only looking at evidence that sort of arose post-trial as opposed to evidence that could have been admitted but was not admitted because of some kind of constitutional violation. So, for example, take a Brady claim where the reason why the evidence wasn't admitted at trial was because it was unconstitutionally undisclosed to the defendant. Why wouldn't that be new evidence that could show actual innocence? Well, if there was a successful Brady claim, I think by definition it wouldn't have been available to the defense at trial. So, you know, the prosecution would have withheld it. Defense counsel didn't have access to it. So that's new evidence in that case. Well, it would be new at some point, I guess. So, I mean, you're trying to avoid the statute of limitations here. So the Brady evidence, you discover it, you know, six months later. You then have one-year statute of limitations because it's newly discovered evidence. So you've got a tolling provision for newly discovered, right? So that's under the statute of limitations. But then after that tolling provision runs, would it still be new evidence under your view? I think under the Supreme Court's, the way that it's applied to Quigley and Shlup, I think that still would be. Our definition is just if trial counsel has it at trial, then you cannot raise that as new evidence. That's different than the Brady claim, though, because trial counsel has it. But the failure to introduce it is not, you know, the defendant's fault. It's the unconstitutional ineffective assistance by trial counsel. I think the problem there is that this is an incredibly rare exception. It's very difficult to meet. And it's supposed to be the rare case where someone has new evidence. But in every single trial, you're going to have a defense counsel, even the best defense counsel, will choose not to raise certain evidence. So what's going to end up happening is you'll have plenty of prisoners come back years later. And they will point to a look at this great new evidence. Now you need to spend all this time dealing with my statute of limitations claim. When a statute of limitations, it should be quite easy to dismiss on those grounds. And that not only does it hurt, you know, the public interest.  I guess I would flip that on you and say let's assume that counsel was ineffective. You know, there's DNA evidence. It's a rape case. And there's DNA evidence that his client was not a match to the rapist. And counsel doesn't introduce that evidence at trial. Clear and effective assistance. The defendant goes off, goes to jail, only, you know, three years later learns that this DNA evidence exists. Doesn't file within, and maybe could not even file within the statute of limitations because newly discovered evidence under the tolling provision of the statute itself. Doesn't file it. Why would we say, if McQuiggan means anything at all, why would we say that the defendant couldn't file and say I'm actually innocent? There's DNA evidence that proves that I'm not the rapist. My counsel had it at the time of trial but just didn't submit it. I think it's kind of thinking about this in context of what would actually have to happen for this to come up this way. So you'd also have to have an appellate counsel who missed this incredibly obvious. Well, they wouldn't, I mean, they wouldn't even know it existed because it's not in the record. I mean, I was appellate counsel in a lot of cases. I never, like, tried to find the evidence that trial counsel didn't, you know, admit, right? It'd be post-conviction counsel that found it, right? Well, yes, it could be post-conviction counsel. That's why you have the gateway, so you can get out of the statute of limitations. Well, in state habeas, that would be a different rule. And just about everyone raises ineffective assistance of trial counsel. And part of that is, you know, you go and get the trial counsel's file and you go look for that and you look for good evidence. Yeah, so your argument is just, like, don't worry about that because they would meet the statute of limitations. But the Supreme Court created McQuiggan so that you have this exception. So if you don't meet the statute of limitations, you can still get the evidence and you can still get out. I think this would be an extension of McQuiggan. There would be a lot more claims. So I haven't heard, I just, I mean, I don't want to press you too hard on this because we may not even reach it. But, I mean, I just want to make clear, your position would be that it would just be tough luck for that person whose counsel didn't put the DNA evidence into the record, that the DNA evidence established that he was actually innocent because he missed the statute of limitations to bring that. I mean, that's your position, right? Well, I think it. The answer is yes. It's either yes or no. Yes. Okay. I have a question about an objection, a point you made. You said we look at these two affidavits for plain error because in the magistrate's report and recommendation, there was no objection. There was objection about lots of other evidence, but there was no objection with regard to how the district court looked at these two affidavits. Is that correct? Yes, that's correct. Okay. And so what is the implication of that? What do you mean we look at these two affidavits for plain error? Well, so essentially that. I mean, is that as to whether plain error as to whether they show actual innocence? Yes. When do they factor into the actual innocence analysis? So basically I think. How they factor in that analysis. He objected to the ballistics. I mean, he talked about that, the new ballistics evidence, the medical. But he said nothing in the objections about the evaluation of it. That's correct. And I think one way it could work is, you know, you can take that original ballistics report, the medical report. Those aren't new evidence. Those shouldn't be considered. And then you have the two bone and cash affidavits. Those are waived. Can't consider that. And the only other piece of new evidence would be the second amended ballistics report. And that's in favor of the state. That's not evidence of innocence. Right. And so what do you mean by plain error? So we would say those two affidavits don't show plain error as to the actual innocence ruling? Yes, there would have to be some grave, you know, injustice. The words were plain error standard for Simpson to overcome that and have the court consider those affidavits. Okay. Thank you. Thank you. All right. Thank you, Mr. Malden. Ms. Myles-Golson. Thank you, Your Honors. This is not an exceptional case necessarily because of the evidence of actual innocence, but because of the scarcity and unreliability of the evidence of guilt presented at trial. This case hinged on Chandler's testimony and the state's theory that Mr. Simpson hired him and provided him a .38 revolver to shoot the victim with. That evidence is not just undermined by the bone and cash affidavits, but by ballistics evidence. It is likely that any reasonable juror weighing this witness testimony as the state admitted was impeached repeatedly against hard and fast ballistics evidence would deem that ballistics evidence more credible. That ballistics evidence indicates that a .38 revolver was not used to shoot the victim. That undermines a key theory of the state. On the ballistics evidence, I mean, wasn't that initial report just didn't even make any sense? I mean, I don't know a lot about ballistics, but I mean, the way I understood the problem with that report is it was you were shooting, the report said that you used a type of gun to shoot a type of bullet that that gun actually can't shoot. Your Honor, it stated that the cartridges, that the bullet was loaded into a 9mm cartridge, which is possible and may not be what most people would do with a .38 bullet, but it is possible for that to be loaded in a 9mm cartridge and shot out of a 9mm pistol. And there were individual characteristics within the bullet and the cartridges that led to that conclusion within the original ballistics report if you look at that first paragraph within the results and observations. The amended report that the state referenced is internally inconsistent and would likely be deemed less reliable by a jury. And because this ballistics evidence would have undermined not just the state's theory that the victim was shot with Stimson's gun, but the state's statement and opening statements at trial that there was no forensics in this case, it is likely that any reasonable juror would have had reasonable doubt because Mr. Stimson's actual innocence evidence undermines key pieces of the state's theory of the case, discredits the only witness tying Mr. Stimson to this crime, and points to an alternative suspect as having committed the crime. In House Rebell, the Supreme Court stated that the reason this analysis is holistic is so the weight of the evidence actually presented at trial in support of guilt is what is weighed against the evidence of actual innocence. Just like in House, this is not a case of complete exoneration. This is a case where the state put forth a purely circumstantial case that has now been discredited and contradicted by both scientific and witness testimony. Thank you. All right. Thank you. And Ms. Miles-Golson, I see you were appointed by the court to represent Mr. Stimson on this appeal, and we thank you for your service. The case was well argued on both sides. Thank you.